UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
BARRY PASTOR,

                        Plaintiff,

  -against-                                                 **Memorandum of Decision & Order**

WOODMERE FIRE DISTRICT, WOODMERE FIRE       16-cv-892 (ADS)(ARL)
DEPARTMENT, and STANDARD SECURITY LIFE INSURANCE
COMPANY OF NEW YORK,

                       Defendants.
--------------------------------------------------------------------------------x

<u>APPEARANCES:</u>

**McKenna & Schneier**
*Co-Counsel for the Plaintiff*
10 Adair Court
Malverne, NY 11565
        By:    Patrick M. McKenna, Esq., Of Counsel

**Westerman Ball Ederer Miller Zucker & Sharfstein, LLP**
*Co-Counsel for the Plaintiff*
1201 RXR Plaza
Uniondale, NY 11556
        By:    Michael A. Levy, Esq., Of Counsel

**Siler & Ingber, LLP**
*Co-Counsel for the Defendants Woodmere Fire District and Woodmere Fire Department*
1399 Franklin Avenue, Suite 103
Garden City, NY 11530
        By:    Jeffrey B. Siler, Esq.
                  Maria Massucci, Esq., Of Counsel

**Rubin, Fiorella & Friedman, LLP**
*Co-Counsel for the Defendants Woodmere Fire District and Woodmere Fire Department*
630 Third Avenue, 3rd Floor
New York, NY 10017
        By:    Paul Kovner, Esq., Of Counsel

**Clyde & Co. US LLP**
*Attorneys for the Defendant Standard Security Life Insurance Co. of N.Y.*
405 Lexington Avenue
New York, NY 10174
        By:    Eileen K. Sorabella, Esq.
                  Nicholas L. Magali, Esq., Of Counsel

SPATT, District Judge:

On February 22, 2016, the Plaintiff Barry Pastor commenced this action against his employers, the Woodmere Fire Department (the "Fire Department") and the Woodmere Fire District (the "Fire District," together with the Fire Department, "Woodmere"), as well as the Standard Security Life Insurance Company of New York ("Standard"), alleging that he was wrongfully denied disability insurance benefits in violation of his constitutional rights to due process and equal protection.

Presently before the Court is a motion by Standard, pursuant to Federal Rules of Civil Procedure ("FED. R. CIV. P.") 12(b)(6) and 12(c), seeking to dismiss the Plaintiff's claim based on Standard's alleged breach of the implied covenant of good faith and fair dealing in an insurance contract.

For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I. BACKGROUND

The following facts are drawn from the complaint and construed in favor of the Plaintiff.

In April 1970, the Plaintiff joined the Fire Department as a volunteer firefighter. The Fire Department operates within the Fire District, which is a political subdivision of the State of New York.

At all relevant times, the Fire Department maintained an accident and health insurance policy (the "Policy") issued by Standard for the benefit of its members. According to the complaint, the Fire District and Fire Department were sponsors and administrators of the Policy.

On May 25, 2009, the Plaintiff suffered an on-the-job injury when he severely twisted his left knee. He immediately came under the care of one James M. Kipnis, M.D.

The following day, on May 26, 2009, he reported the injury to Woodmere. At that time, the Fire District's Deputy Assistant Treasurer (the "Treasurer") provided him with two forms, namely, a

Workers' Compensation VF-1 form and a Workers' Compensation VF-2 form. The Plaintiff promptly completed all required portions of these forms.

According to the complaint, the Treasurer did not provide the Plaintiff with any additional forms at that time. Nor did he provide the Plaintiff with a copy of the Policy or advise him of any additional requirements to obtain potentially available benefits.

On June 9, 2009, the Treasurer countersigned the forms, and promptly submitted them to Woodmere's Workers' Compensation carrier, namely, Fire Districts of New York Mutual Insurance Company ("Fire Districts Mutual").

On June 17, 2009, Fire Districts Mutual confirmed in writing that a claim for Workers' Compensation benefits had, in fact, been submitted on the Plaintiff's behalf for an injury occurring on May 25, 2009.

In February 2010, the Treasurer provided the Plaintiff with a Workers' Compensation VF-3 form. He completed and returned this form on February 25, 2010.

In mid-2012, an independent medical examiner retained by Fire Districts Mutual recommended that the Plaintiff undergo a total left knee replacement.

On January 30, 2013, the Plaintiff informed the Treasurer of his anticipated surgery and inquired about the process for submitting a claim for supplemental income benefits under the Policy. In response to this inquiry, the Treasurer provided the Plaintiff with contact information for Kathleen Lombardo, a claims examiner.

That same day, January 30, 2013, via e-mail, Ms. Lombardo provided the Plaintiff with a claim form and relevant instructions for submitting a claim under the Policy. According to the complaint, Ms. Lombardo's e-mail implicitly acknowledged that the Plaintiff's injury occurred on May 25, 2009.

The following day, on January 31, 2013, the Plaintiff informed the Fire District's five-member Board of Commissioners (the "Board") of his anticipated surgery. He also advised the Board that he

had been in contact with Ms. Lombardo and received the necessary paperwork for submitting a claim under the Policy.

Further, he provided the Board with a Form 3-50, which he requested the appropriate Woodmere officials complete and return to Ms. Lombardo. Apparently, Form 3-50 is a Notice of Claim, which, in order to be effective, must be cosigned by the Plaintiff and a representative of Woodmere.

On February 4, 2013, the Plaintiff underwent a total left knee replacement. As a result, the New York State Workers' Compensation Board determined that the Plaintiff was permanently partially disabled.

On February 19, 2013, the Plaintiff sent to Ms. Lombardo a Form 3-75, entitled "Health Care Provider's Statement," which had been prepared and signed by Dr. Kipnis.

On March 1, 2016, Linda Gregory, a claims specialist acting on behalf of Standard, sent a certified letter to the Plaintiff. In this letter, Ms. Gregory stated that coverage under the Policy had been denied on the ground that the Plaintiff failed to timely report his claim within 90 days of his accident, or by August 23, 2009. Ms. Gregory advised the Plaintiff that he could submit a written explanation for his failure to do so.

In response, on March 5, 2013, the Plaintiff provided Standard with a copy of the confirmatory letter he received from Fire Districts Mutual on June 17, 2009, indicating that a claim for Workers' Compensation benefits had been made on his behalf for an injury occurring on May 25, 2009.

He further stated that, despite notifying Woodmere of his accident on March 26, 2009, he was not provided with any forms other than those applicable to Workers' Compensation benefits; he was not provided with a copy of the Policy; and he was not advised of any additional requirements to obtain potentially available disability benefits. He stated that he provided

4

Woodmere with a Form 3-50 for countersigning on January 31, 2013, but that, apparently, it had never been countersigned or returned.

On March 11, 2013, Ms. Gregory confirmed that Standard was disclaiming coverage for the Plaintiff's claim under the Policy, again citing the Plaintiff's failure to strictly comply with the 90-day reporting period as the reason.

The Plaintiff allegedly engaged in subsequent attempts to demonstrate that he had taken all reasonably diligent steps to secure coverage under the Policy. However, Standard continued to disclaim coverage.

On these facts, the Plaintiff alleges causes of action against Woodmere sounding in: (1) § 1983 deprivation of procedural due process; (2) § 1983 deprivation of equal protection; (3) § 1983 deprivation of substantive due process; and (4) common law breach of fiduciary duty. The Plaintiff also alleges a claim against Standard based on breach of the implied covenant of good faith and fair dealing in the Policy.

As noted above, on April 29, 2016, Standard filed a motion under Fed. R. Civ. P. 12(b)(6) and 12(c), seeking to dismiss the Plaintiff's claim as time-barred by the terms of the Policy, or, alternatively, on the ground that it fails to state a claim upon which relief may be granted.

## II. Discussion

### A. The Standard of Review

Under FED. R. CIV. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

The same standard applies to Rule 12(c) motions for judgment on the pleadings. *See Carter v. Syracuse City Sch. Dist.*, No. 15-2395, 2016 U.S. App. LEXIS 12870, at *3 (2d Cir. July 11, 2016) (Summary Order).

B.   **Preliminary Issue: Whether the Court May Consider Evidence Outside the Pleading**

Before turning to the parties' substantive contentions, the Court notes that Standard submitted documentary evidence, namely, a copy of the Policy, in support of its motion to dismiss. In their responses, the Plaintiff and Woodmere argue that the Court may not consider such extrinsic evidence in resolving the present motion – that Rule 12(b)(6) strictly requires the Court's focus to remain trained on the four corners of the complaint.

For this proposition, the Plaintiff relies on the longstanding rule in this Circuit – reiterated recently in the case of *Goel v. Bunge*, 820 F.3d 554, 559-60 (2d Cir. 2016) – that, because "[a] motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint, . . . a court adjudicating such a motion may review only a narrow universe of materials." The Plaintiff apparently misconstrues this familiar principle as creating an absolute bar to the courts' ability to consider documentary evidence that is not annexed to the complaint.

However, contrary to the Plaintiff's contentions, "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. FS$^2$ Capital Partners, LLC*, No. 14-cv-7240, 2015 U.S. Dist. LEXIS 118679, at *15 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (citation and quotation marks omitted). In fact, it is well-settled that the types of evidence the Court may consider in adjudicating this motion include:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and

6

that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)).

Applying this rule, courts within this Circuit routinely consider copies of relevant policy documents in connection with insurance disputes. *See Tagged, Inc. v. Scottsdale Ins. Co.*, 2011 U.S. Dist. LEXIS 75262, at *2-*3 n.1 (S.D.N.Y. May 27, 2011) (in a suit concerning an insurance carrier's duty to defend and indemnify a policyholder, the court found that the carrier had properly submitted with its Rule 12(b)(6) motion the insurance policy in question; noting that neither the authenticity nor accuracy of the policy had been contested, and "[t]he insurance policy falls within the classic category of documents that may be considered although not attached to the complaint because it is a contract that gives rise to the legal obligations on which [the plaintiff]'s claims are based"); *see also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 140 n.1 (2d Cir. 1999) (in an action to recover group life insurance benefits, the Second Circuit affirmed the district court's decision to consider a copy of the policy in question in dismissing the complaint under Rule 12(b)(6)); *Farone & Son Funeral Home, Inc. v. Delee*, No. 15-cv-679, 2016 U.S. Dist. LEXIS 59114, at *14-*15 (N.D.N.Y. May 4, 2016) (in an action by a surviving spouse to recover benefits under a group life insurance policy, the court considered a copy of the policy in question because the complaint had explicitly referenced it); *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 168 n.3 (E.D.N.Y. 2015) (in an action to recover under a life insurance policy, the court relied on a copy of the policy submitted in support of a Rule 12(b)(6) motion); *Jones v. UNUM Provident Ins.*, No. 06-cv-1427, 2007 U.S. Dist. LEXIS 65678 (N.D.N.Y. Sept. 5, 2007) (in an action to recover long term disability insurance benefits, finding that the underlying

policy was appropriate to consider when deciding the defendant's Rule 12(b)(6) motion because the plaintiff had "expressly refer[red] to" the policy in the complaint).

In the Court's view, the Policy in this case, the authenticity and accuracy of which no party disputes, clearly falls within the recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion.

In this regard, the complaint is rife with explicit references to the Policy, as well as the parties' rights and obligations thereunder. *See, e.g.*, Compl. ¶ 13 (alleging that the Fire District and Fire Department "maintained an ESIP Accident and Health policy . . . issued by defendant Standard Security [Special Risk Blanket Insurance Certificate, Certif. No.: (SLA5102NY288)] for the benefit of permanently injured firefighters," including the Plaintiff) (brackets in original); *id.* ¶ 34 (alleging that the Plaintiff's "permanent and partial disability triggered [the Plaintiff]'s entitlement to the supplemental income benefits under the [Fire] District's A&H Policy"); *id.* ¶¶ 40, 42 (quoting policy language); *id.* ¶ 49 (alleging that the Plaintiff had "a constitutionally protected property right to receive benefits under the District's A&H Policy"); *id.* ¶¶ 53, 62, 67, 74, 82 (alleging that the Plaintiff has and continues to sustain financial injury in the form of lost benefits under the Policy); *id.* ¶ 77 (alleging that Standard "breached the A&H Policy" by disclaiming coverage).

Contrary to the arguments set forth by the non-movants, namely, that the Policy is neither integral to nor incorporated by reference in the complaint, the Court finds that the only reasonable conclusion to draw from the Plaintiff's allegations is that the Policy is the singular "legal document containing [the] obligations upon which" the Plaintiff's claim against Standard "stands or falls." *See Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Accordingly, in its discretion, the Court will consider the Policy in resolving this motion.

## C. As to Whether the Plaintiff's Claim Against Standard is Time-Barred Under the Policy

Referring to a section of the Policy entitled "Legal Action," Standard contends that the Plaintiff's claim against it is untimely, as a matter of law. The relevant policy provision states that:

> No action at law or in equity shall be brought to recover on the Policy prior to the expiration of 60 days after proof of loss has been filed, nor shall such action be brought at all unless brought within 3 years from expiration of the time within which proof of loss is required by this Policy.

*See* Exhibit "1" to the Apr. 29, 2016 Declaration in Support by Eileen K. Sorabella, Esq. (Policy), at p. C9.

According to Standard, since the Plaintiff's deadline for reporting a loss under the policy expired 90 days after his injury, namely, on August 23, 2009, then the contractual limitations period for filing an action for coverage benefits expired three years later, namely, on August 23, 2012. Thus, Standard contends that the present action, which was commenced on February 22, 2016, is untimely. The Court disagrees.

In the Court's view, questions of fact abound as to the date on which the Plaintiff was actually required to provide Standard with notice of his potential claim, and therefore, when the limitations period began to run.

Of prime importance, the section of the policy concerning policyholders' reporting obligations states, in relevant part, that:

> Written <u>notice of loss</u> upon which [a] claim may be based must be given to Us within 90 days of the date of a <u>covered loss</u> for which benefits may be claimed. . . .
>
> Failure to furnish notice within the time provided in the Policy will not invalidate any claim if it is shown it was [not] reasonably possible to furnish such notice and the notice was furnished as soon as was reasonably possible. We will, upon receipt of the notice, furnish forms to the Insured Person for filing <u>proof of loss</u>.

Policy, at C9 (emphasis supplied).

Under this section, a policyholder has 90 days from a "covered loss" to notify Standard of his or her claim. However, the term "covered loss" is not defined.

9

Standard appears to assume that a "covered loss" is the date on which the policyholder's injury occurred. However, in the Court's view, the description of benefits in the policy leaves room for interpretation on this point.

The Plaintiff does not specify the policy provision under which he is seeking coverage. However, he does allege that his "permanent and partial disability triggered [his] entitlement to supplemental income benefits . . ." Compl. ¶ 34. Standard asserts, and the Plaintiff does not appear to dispute, that any such coverage arose under Part VI.B of the policy. *See* Standard Memo of Law at 2. That provision states, in pertinent part, as follows:

> We will pay benefits . . . for Partial Disability if such disability occurs as a direct result of Injury. The Injury must be . . . the direct result of the Insured Person's participation in a Covered Activity . . .

Policy, Pt. VI.B, at SRBC-2001-006.

The Policy defines a "partial disability" as "an Insured Person's inability to do one or more, but not all, of the material and substantial duties of his Regular Occupation. The Insured Person must be under the regular care of a Physician during Partial Disability." Policy, at C5.

In the Court's view, these provisions, taken in the context of the broader Policy, can plausibly be read to mean that a "covered loss" – that is, an event for which "[Standard] will pay benefits" – occurs not upon the initial injury, but when the policyholder is determined to be disabled by his or her physician. *See id.* (identifying the occurrence for which Standard "will pay benefits" as the "Partial Disability"; the "disability" is apparently distinct from, and must be caused by, the "Injury"). According to the complaint, the Plaintiff was not deemed disabled until February 2013.

Such an interpretation would be consistent with other provisions in the Policy, such as Part II, which also applies to a policyholder that "is Totally Disabled or Partially Disabled as a result of an Injury," and does not allow for coverage unless the policyholder's examining physician "certif[ies] that the Insured Person is suffering from a Permanent Physical Impairment . . ." Policy, at SRBC-2001-002.

Thus, in the Court's view, a factual question exists as to whether the 90-day reporting period commenced on May 25, 2009, when the Plaintiff injured himself; February 19, 2013, when the Plaintiff's physician declared him to be disabled; or some other date to be determined through discovery.

Further, assuming that the reporting period started to run when the Plaintiff was deemed disabled, he then had 90 days to give Standard "[w]ritten notice of loss." According to Standard, the three-year limitations period, within which the Plaintiff was permitted to bring a legal action, started running upon the expiration of that 90-day reporting period.

However, again, this interpretation is apparently inconsistent with the clear policy language. As noted above, the Policy states that the limitations period runs from the date that "proof of loss" – not "written notice of loss" – is or should have been filed. *See* Policy, at C9 (barring actions to recover benefits which are brought "prior to the expiration of 60 days after *proof of loss* has been filed" or "within 3 years from expiration of the time within which *proof of loss* is required") (emphasis supplied).

Although neither term is defined, in the Court's view, it is clear that "written notice of loss" and "proof of loss" are not one in the same. In fact, the policy language concerning insureds' reporting obligations makes clear that these terms signify wholly different events in the claims-reporting process, with a policyholder first submitting written notice of loss, and only then receiving from the carrier forms for filing proof of loss. *See* Policy, at C9 ("We will, upon receipt of the [written] notice [of loss], furnish forms to the Insured Person for filing proof of loss").

Stated otherwise, a policyholder is apparently not required to file "proof of loss" – and therefore, the limitations period does not begin to run – unless and until Standard, upon receiving "written notice of loss," provides the claimant with the appropriate filing forms. On the current record, there is a clear question of fact as to whether Standard satisfied its obligations in this regard.

11

In summary, accepting all of the Plaintiff's factual allegations as true, and drawing all reasonable inferences in his favor, it is plausible that, upon receiving written notice in February 2013 that the Plaintiff had been declared disabled by his physician, Standard's own failure to "furnish forms to the [Plaintiff] for filing proof of loss" may have tolled the limitations period to the extent allowable under the contract. Simply stated, the complaint alleges enough facts to make it plausible that the Plaintiff's legal claim against Standard is, in fact, timely.

Accordingly, Standard's motion to dismiss the Plaintiff's fifth cause of action on the ground that it is time-barred under the Policy is denied.

D.   **As to Whether the Plaintiff Has Alleged a Plausible Claim Against Standard Based on Breach of Implied Covenant of Good Faith and Fair Dealing**

Standard's alternative argument is that the complaint fails to state a plausible claim based on breach of the implied covenant of good faith and fair dealing. In particular, Standard asserts that New York law does not recognize an independent cause of action based on the bad faith denial of insurance benefits. However, this argument partially misstates the law.

"Under New York law, where a party pleads a breach of contract claim *and* a breach of the implied covenant of good faith and fair dealing claim based upon the same facts, 'the latter claim' should 'be dismissed as redundant.'" *Weaver v. Axis Surplus Ins. Co.*, No. 13-cv-7174, 2014 U.S. Dist. LEXIS 154746, at *52 (E.D.N.Y. Oct. 30, 2014) (quoting *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 170 (E.D.N.Y. 2014)) (emphasis supplied).

In other words, it is true, as Standard suggests, that "New York courts do 'not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing,'" but only "'when a breach of contract claim, based upon the same facts, is also pled.'" *Sikarevich Family L.P.*, 30 F. Supp. 3d at 170 (citing cases); *see id.* at 171 (noting that the same rule applies to claims based on bad faith denial of insurance coverage: "Like good faith and fair dealing claims, a claim for 'bad faith denial of coverage . . . would be duplicative of a claim sounding in breach of contract'" (quoting

*Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-cv-3876, 2011 U.S. Dist. LEXIS 18197, at *11 (E.D.N.Y. Feb. 24, 2011))).

However, in this case, the Plaintiff did not plead a similar cause of action sounding in breach of contract, and so there is no legal basis for concluding that the Plaintiff's claim based on the implied covenant of good faith and fair dealing is redundant or otherwise not cognizable. On the contrary, in the absence of a duplicative breach of contract claim, "it cannot be questioned that such a claim generally exists under New York law." *Goldmark, Inc.*, 2011 U.S. Dist. LEXIS 18197, at *11.

As one district court has explained:

> Under New York law, a duty of good faith and fair dealing is implied in every contract. *See, e.g., U.S. Fid. & Guar. Co. v. Braspeto Oil Servs. Co.*, 369 F.3d 34, 64 (2d Cir. 2004); *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). " 'The elements of a claim for breach of the duty of good faith and fair dealing are practically identical to the elements of a negligence claim': (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Washington v. Kellwood Co.*, 05 Civ. 10034 (DAB), 2009 U.S. Dist. LEXIS 32565, 2009 WL 855652 at *6 (S.D.N.Y. Mar. 24, 2009), quoting *Boyd v. Univ. of Illinois*, 96 Civ. 9327 (TPG), 2001 U.S. Dist. LEXIS 2515, 2001 WL 246402 at *10 (S.D.N.Y Mar. 13, 2001). The duty comprises "any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291, 639 N.Y.S.2d 977, 979 (1995) (internal quotation marks omitted).

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, No. 04-cv-3531, 2009 U.S. Dist. LEXIS 130133, at *53-*54 (S.D.N.Y. Aug. 5, 2009).

Although "the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship," the "covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 32nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 746 N.Y.S.2d 131 (2002).

In this case, accepting as true all of the Plaintiff's well-pled allegations, the Court finds that the complaint states a plausible claim for breach of the implied covenant of good faith and fair dealing against the Defendant Standard.

Initially, to the extent that New York law implies in every contract, including insurance contracts, a covenant of good faith and fair dealing, the first element of the relevant standard is satisfied in this case.

Further, the Policy states that an insured's failure to strictly comply with the reporting requirements "will not invalidate any claim if it is shown it was [not] reasonably possible to furnish such notice and the notice was furnished as soon as was reasonably possible." Policy, at C9.

In this regard, the complaint alleges that, immediately after injuring himself, the Plaintiff took all reasonably diligent steps to preserve his right to available coverage. However, he alleges that Woodmere concealed from him the specific reporting obligations contained in the Policy. He further alleges that, through no fault of his own, failures on the part of Woodmere prevented Standard from receiving what notice he did provide to his supervisors in a timely fashion.

The Plaintiff alleges that, promptly upon learning that Standard did not receive notice of his claim, he explained these circumstances in a written submission, together with supporting documentation, but that Standard, despite suffering no prejudice by the alleged untimely notice, wrongly disclaimed coverage.

In this regard, the complaint alleges that Standard has previously covered claims by other injured firefighters who similarly failed to strictly comply with the Policy's notice requirements. According to the Plaintiff, this course of past conduct supports the inference that Standard's conduct in dealing with him, specifically, was inconsistent with its duty to act in good faith in performing under the Policy.

Finally, the complaint sufficiently alleges that Standard's conduct in disclaiming coverage for the Plaintiff's claim caused him to suffer damages in the form of lost benefits.

In the Court's view, these allegations, if proven, are sufficient to a state claim against Standard for breach of the implied covenant of good faith and fair dealing. Accordingly, Standard's motion to dismiss the Plaintiff's fifth cause of action on the ground that it fails to state a claim for relief is denied.

E.     As to Whether the Plaintiff Has Stated a Valid Claim for Punitive Damages

Finally, Standard contends that the Court should dismiss the portion of the Plaintiff's complaint that seeks an award of punitive damages. In this regard, Standard argues that, as a matter of New York law, punitive damages are unavailable for contract claims, including alleged breaches of the covenant of good faith and fair dealing. The Court agrees.

With limited exceptions, "[t]he general rule under New York law is that punitive damages are not available in breach of contract actions because they deal with wrongs between private parties." *Hudson Motors Partnership v. Crest Leasing Enters.*, 845 F. Supp. 969, 974 (E.D.N.Y. 1994) (citing *Hutton v. Klabal*, 726 F. Supp. 67, 73 (S.D.N.Y. 1989)). Rather, punitive damages may only be awarded where the wrong associated with the breach is aimed at the public, or when the actions of the breaching party involve such a high degree of bad faith that they are independently actionable as a tort. *See id.*; *see also Kunica v. St. Jean Fin.*, No. 97-cv-3804, 1998 U.S. Dist. LEXIS 11867, at *23-*26 (S.D.N.Y. Aug. 23, 1998).

In the Court's view, even accepting all of the Plaintiff's allegations as true, nothing in the complaint plausibly supports the conclusion that Standard's conduct rose to the level of bad faith needed to sustain punitive damages.

Accordingly, to the extent the Plaintiff asserts a claim for punitive damages against Standard, the motion to dismiss that claim is granted.

### III.    Conclusion

Based on the foregoing, the Court grants in part and denies in part Standard's motion to dismiss.

In particular, the Court grants the motion to dismiss the Plaintiff's claim for punitive damages on its claim based on Standard's alleged breach of the implied covenant of good faith and fair dealing.  The motion is denied in all other respects.

This case is respectfully referred to United States Magistrate Judge Arlene R. Lindsay for discovery.

It is **SO ORDERED:**

Dated:  Central Islip, New York
             November 7, 2016            */s/ Arthur D. Spatt*_____
             ARTHUR D. SPATT
             United States District Judge